**Clay A. Young**
**Delaney, Wiles, Hayes,**
**Gerety, Ellis & Young, Inc.**
**1007 W. Third Avenue, Suite 400**
**Anchorage, Alaska  99501**
Telephone: (907) 279-3581
Fax:  (907) 277-1331
E-mail:  cay@delaneywiles.com
**Attorneys for Defendants**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SUSAN L. WINTON,            ) | |
|                     ) | |
|          Plaintiff,        ) | |
|             vs.             ) | Case No.  A05-0215 CV (TMB) |
|                     ) | |
| NORTH AMERICAN VAN      ) | |
| LINES, INC., and FLORIDA     ) | |
| MOVING SYSTEMS, INC.      ) | |
|                     ) | |
|         Defendants.      ) | |

_____

## DEFENDANTS NORTH AMERICAN VAN LINES, INC. AND FLORIDA MOVING SYSTEMS, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Now come the Defendants, North American Van Lines, Inc. and Florida Moving Systems, Inc. (hereinafter and collectively, the "Defendants"), by and through their attorneys, Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc., and in answer and response to the Plaintiff's Complaint, states as follows:

1.     Plaintiff Susan L. Winton (hereinafter, "Winton") is a resident of the State of Alaska and has been a resident of the Municipality of Anchorage, Alaska since September, 2002.

**ANSWER:**  Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 1 of Plaintiff's Complaint, and therefore deny the same.

2.  Defendant North American Van Lines, Inc. is a national corporation with headquarters in Fort Wayne, Indiana, that does business in the State of Alaska. North American has an agency relationship and business affiliation with Defendant, Florida Moving Systems, Inc.

**ANSWER**:  Defendant, North American Van Lines, Inc. (hereinafter, "North American") is a Delaware corporation with its principal place of business in Fort Wayne, Indiana, that it engages in the business of land motor shipment of property, is a carrier within the meaning of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 13101 *et seq.* North American further states that Defendant, Florida Moving Systems, Inc. (hereinafter, "FMS") is a disclosed interstate Household Goods Agent of North American pursuant to a limited agency agreement with North American.

3.  Defendant FMS is a corporation with headquarters in Melbourne, Florida, that does business in Alaska as an agent and affiliate of North American.

**ANSWER:**  Defendants state that FMS is a Florida corporation and that it engages in the business of land motor shipment of property within the State of Florida and is a disclosed

interstate Household Goods Agent of North American pursuant to a limited agency agreement with North American. All other allegations contained in Paragraph 3 are denied.

4.      On March 5, 2002, at the request of Winton, Florida Moving prepared and submitted to Winton a cost estimate on a North American form (the "North American Cost Estimate") in the amount of $2,630.00 to transport Winton's household goods from Winton's storage unit in Indialantic, Florida to Seattle Washington.

**ANSWER:**   No answer to Paragraph 4 is required as the "North American Cost Estimate," a true and correct copy of which is attached hereto as **Exhibit "A"** speaks for itself.

5.      On March 7, 2002 pursuant to the North American Cost Estimate, Winton signed a "Storage Contract" with FMS to pack and crate her household goods stored in her storage unit, load her household goods onto FMS' truck, transport the goods to and store them in FMS' warehouse.

**ANSWER:**   No answer to Paragraph 5 is required as the "Storage Contract," a true and correct copy of which is attached hereto as **Exhibit "B"** speaks for itself.

6.      As a specific provision of the Storage Contract, Winton paid an additional $30 charge to FMS for a wooden crate to be built to transport a fragile glass lampshade. Neither FMS nor North American ever provided any wooden crate, which Winton discovered when the fragile

3

glass lampshade was delivered to her in Anchorage, Alaska, having been packed and shipped in a simple cardboard box.

**ANSWER:**   Defendants deny the averments contained in Paragraph 6 of Plaintiffs Complaint. North American further denies the averments contained in Paragraph 6 of the Complaint to the extent that they imply any obligation on the part of North American to Winton pursuant to the Storage Contract.

7.     On March 7, 2002, Winton observed two employees of FMS as they picked up her household goods from her rented storage unit. Winton was present for the entire process of FMS' employee's packing of her household goods and placing of her goods into crates and into FMS' truck.

**ANSWER:**   Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 7 of Plaintiff's Complaint, and therefore deny the same.

8.     One of the two FMS employees told Winton that they were warehousemen and did not usually pack individual's household goods as part of the customary job duties. One man advised Winton that he had only worked in the warehouse and never went out to pack and load jobs. The two FMS employees did not have an adequate number of boxes to properly complete the packing of Winton's household goods, and also did not have an adequate number of "Household

Goods Descriptive Inventory" forms to properly list and describe Winton's household goods. When FMS' two employees ran out of the proper Descriptive Inventory forms, the substituted improper "Packing Exception" forms that are normally used for a different and unrelated purpose, and as a consequence, inadequately described some of Winton's household goods.

**ANSWER:**   Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 8 of Plaintiff's Complaint, and therefore deny the same.

9.      Winton's household goods were picked up from the storage unit and some of the goods were placed into four wooden boxes by the two FMS employees. The remainder of Winton's household goods were not placed into wooden boxes as they should have been and as Winton expected, because FMS' employees did not have enough room. Winton was told by FMS' employees that these goods would be loaded and packed into proper wooden storage boxes when the employees arrived back at FMS' warehouse.

**ANSWER:**   Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 9 of Plaintiff's Complaint, and therefore deny the same.

10. Winton was given a copy of Descriptive Inventory pages and the Packing Exception pages by FMS' employees as they left her storage unit to take her household goods to FMS' warehouse. Winton retains possession of the copies given her by FMS' employees.

**ANSWER:** Defendants admit the allegations contained in Paragraph 10.

11. Pursuant to Winton's contract with FMS and North American, her household goods were to remain stored at FMS' warehouse in Florida until Winton advised FMS and North American of her new address to which her goods were to be shipped in the State of Washington. The agreed cost of such storage was $80 a month.

**ANSWER:** No answer to Paragraph 11 is required as the Storage Contract speaks for itself. However, North American denies the averments contained in Paragraph 11 of the Complaint to the extent that they imply any obligation on the part of North American to Winton pursuant to the Storage Contract.

12. On September 2, 2002, Winton relocated from Seattle Washington to Anchorage, Alaska with the intention of residing in Anchorage.

**ANSWER:** Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 12 of Plaintiff's Complaint, and therefore deny the same.

6

13.     On February 20, 2003 Winton contacted FMS and requested an estimate from FMS to change the shipment and delivery destination of her household goods from the original contractual destination of Seattle, Washington to Anchorage, Alaska. On February 20, 2003 Tracy Cody of FMS provided Winton an estimate of $5,796.55.

**ANSWER:**    Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 13 of Plaintiff's Complaint, and therefore deny the same. Defendants admit that Winton was provided with an estimate of $5,796.55 on or about April 24, 2003. A true and correct copy of the April 24, 2003 estimate is attached hereto as **Exhibit "C"**.

14.     On several occasions, Winton specifically and explicitly requested from Ms. Cody of FMS and updated estimate of the cost of insuring her household goods for shipment and delivery to the new destination in Anchorage, Alaska. The insurance had been quoted to Winton on a "per pound" basis at the time she entered into the original storage and shipment contract with FMS and North American. Winton made such request to FMS via email correspondence on March 24, 2003 and again on April 16, 2003. On both occasions, FMS failed to respond to Winton's inquiry and failed to provide an updated quote for insuring Winton's household goods for the substantially longer and more rigorous journey to Anchorage, Alaska.

**ANSWER:**    Subject to a reasonable opportunity for further investigation or discovery,

Defendants are without knowledge or information sufficient to form a belief as to the truth of the

averments in Paragraph 14 of Plaintiff's Complaint, and therefore deny the same.


15.    Ultimately, FMS told Winton in a telephone conversation that FMS would not

permit Winton to increase the amount of insurance coverage on her household goods. FMS took

the position that once the contract was made to ship Winton's household goods from Indialantic,

Florida to Seattle, Washington, the contractual per pound insurance coverage could not be

modified, even though the contractual delivery destination had been modified by the parties'

mutual agreement.


**ANSWER:**    Subject to a reasonable opportunity for further investigation or discovery,

Defendants are without knowledge or information sufficient to form a belief as to the truth of the

averments in Paragraph 15 of Plaintiff's Complaint, and therefore deny the same.


16.    Winton was concerned that FMS' representative refused to grant her request to

increase the amount of insurance coverage on her household goods to cover the increased risk of

loss or damage during the substantially longer journey. On April 24, 2003, Tracy Cody of FMS

faxed an Order for Service to Winton. The facsimile transmittal cover page bore the names "North

American Van Lines" and "Florida Moving Systems." The facsimile cover sheet contained Ms.

Cody's instructions to Winton to "sign @ both areas marked XX" and to fax the Order for Service

back to Ms. Cody. Ms. Cody made it clear to Winton in a telephone conversation that unless

Winton signed the Order for Service document that had been prepared by FMS / North American, Winton's household goods would not be shipped to her. Under duress, Winton signed the document and faxed it back.

**ANSWER:**    Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 16 of Plaintiff's Complaint, and therefore deny the same. However, Defendant's admit that Winton executed the Order for Service, a true and correct copy of which is attached hereto as **Exhibit "D".**

17.    The document contains the handwritten shipment valuation entry of ".60 per pound." This notation was made by FMS and North American, not by Winton. Winton understood that unless she signed the document as prepared and submitted to her by FMS and North American, her goods would not be shipped to her.

**ANSWER:**    Defendants state that the Order for Service speaks for itself and no answer is required to the averments contained in Paragraph 17 of Winton's Complaint with respect to the language contained therein. Defendants deny the remaining averments of Paragraph 17.

18.    On May 5, 2003, Winton inquired of FMS via e-mail as to the status of the shipment of her household goods. On May 6, 2003, Tracy Cody of FMS advised Winton that her

"shipment was loaded and en route." Ms. Cody gave Winton a telephone number that she said was for customer service as "North American Headquarters" to call for a specific delivery date.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 18.

19.    Winton called the number provided to her by Ms. Cody and was given information by North American as to the status of the shipment. In an e-mail communication dated May 9, 2003, Winton asked Ms. Cody whether FMS and/or North American left her shipment "in the [wooded] crates or is it loose?" Winton further expressed to Ms. Cody that she was "concerned about loading and reloading enroute."

**ANSWER:**    Defendants admit the allegations contained in Paragraph 19.

20.    On May 13, 2003, Ms. Cody responded to Winton that her "shipment was loose loaded, this is the standard way to ship to Alaska." By obvious implication, it is not the standard way to ship to other destinations. Ms. Cody went on to state to Winton, "I would try not to worry all drivers are very careful not to incur any damage."

**ANSWER:**    Defendants admit to the May 13, 2003 communication alleged in Paragraph 20 and deny the remaining averments contained in Paragraph 20.

21.     Winton became very concerned at Ms. Cody's statement that her household goods had been "loose loaded," as she had never been advised that her household goods had been unpacked and removed from the wooden boxes or crates into which they had been placed when picked up from her storage unit. Winton was never told this would be done, was never asked if it could be done, and never authorized her household goods to be removed from the wooden boxes or crates and unpacked or repacked. These actions were taken by FMS and/or North American without Winton's knowledge and consent.

**ANSWER:**     Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 21 of Plaintiff's Complaint, and therefore deny the same.

22.     On May 23, 2003, Winton's household goods were delivered to her residence in Anchorage, Alaska by North American. Winton was given a copy of the Household Goods Bill of Lading by North American's delivery employees.

**ANSWER:**     Defendants admit to the delivery on May, 23, 2003 and further states that said delivery was made by an agent of North American. Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to whether Winton was given a copy of the Household Goods Bill of Lading, a true and correct copy of which is attached hereto as **Exhibit "E"** at the time of the delivery. In addition,

11

North American denies that the delivery of Winton's household goods was completed by North American's employees.

23.     It was immediately obvious to Winton that her household goods had been unpacked, tampered with and repacked. Many of the boxes that were delivered to her by North American were without inventory number affixed anywhere to them. Therefore, these boxes could not be matched up with the numbered box descriptions written on the Descriptive Inventory Sheets of the Packing Exception sheets that were complete by FMS' employees and given to Winton when the employees packed and picked up her household goods from the storage unit in Florida.

**ANSWER:**     Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 23 of Plaintiff's Complaint, and therefore deny the same.

24.     In addition, significant damage was visible on several of the boxes. Further, certain immediately identifiable items such as the grey "Pelican case" that contained Winton's Mamiya medium-format camera, two lenses and various attachments were not on North American's truck and were not delivered to her. Moreover, a white clothes hamper that did not belong to Winton was among the items delivered to her. At Winton's request, the North American employees took the hamper back. The North American employees had no idea where Winton's grey Pelican case containing her camera and lenses was. It was obvious to Winton that her "loose loaded" shipment

of household goods had been mixed in with goods belonging to other individuals and that FMS and North American had not taken adequate steps to identify Winton's goods and maintain the integrity of her shipment.

**ANSWER:**   Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 24 of Plaintiff's Complaint, and therefore deny the same. North American further denies that the delivery was performed by its employees.

25.     Winton communicated via e-mail with North American and FMS on a number of occasion in June and July, 2003 and provided detailed information regarding the missing and damaged household goods, and specifically regarding the grey Pelican Case containing her Maiya camera and equipment. None of the missing items were ever delivered to her.

**ANSWER:**   Defendants admit that there was communication via e-mail between the parties between June and July of 2003. Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 25 of Plaintiff's Complaint, and therefore deny the same.

26.     On June 20, 2003, approximately four weeks after the delivery of some of her household goods, Winton received an additional bill from North American Van Lines in the amount of $372.34.

**ANSWER:**    Defendants admit and a copy of the June 20, 2003 Bill is attached hereto as **Exhibit "F"**.

27.    On June 23, 2003, after numerous communications with FMS in an effort to have North American and/or FMS locate her Pelican case and camera, Winton received an e-mail from Claudia Dineen at FMS directing her to contact North American's corporate office in Indiana. Winton called the North American Claims Department and was advised by a North American employee that her "loose-loaded" household goods had been transferred from one moving van or van driver to another in St. Vrains, Colorado. Winton then contacted North American's corporate office in St. Vrains, Colorado to try to learn more about how her household goods had been handled and transported and whether her Pelican case and camera could be found and returned to her. Winton was not given any information by North American's St. Vrains office except that the van load that included her household goods was supposedly transferred from one North American driver to another North American driver. She was given no information as to the whereabouts of the Pelican case and camera.

**ANSWER:**    Defendants admit that there was communication via e-mail between the parties in June of 2003. Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 27 of Plaintiff's Complaint, and therefore deny the same.

28.     On July 23, 2003 Winton filed a written claim with North American Van Lines Claims Department in Indiana. Winton's claim letter contained a detailed description of the items that had never been delivered to her, including the Pelican case. Winton's letter also described the impossibility of complying with North American's instructions to provide an inventory number since several boxes were delivered to her with no number or other identifying information affixed. She included photographs of her damaged possessions, including deep dents in her wooden stereo cabinet where it had been insufficiently padded (if at all), and a heron sculpture that was delivered to her broken in half. Winton also express her frustration at the lack of response from North American and its affiliate, FMS, to her request for information regarding the fate of her Pelican case and camera. She also made clear in her claim letter that she had been told by FMS that her goods would be shipped in the original wooden crates, when obviously they had not been, but rather had been "loose-loaded" without her knowledge or consent.

**ANSWER:**    Defendants admit that Winton filed a claim, a true and correct copy of the "Claim Letter" is attached hereto as **Exhibit "G"**. The contents of the Claim Letter speak for themselves and require no answer. Defendants deny that Winton ever provided a detailed description of her loss as required by the claim forms provided her by North American. Defendants deny the remaining averments contained in Paragraph 28.

29.     On July 28, 2003 Winton was advised via an unsigned letter from North American Van Lines in Indiana that "all tracing has been negative."

**ANSWER:**   Defendants admit the allegations contained in Paragraph 29.


30.   On July 29, 2003 Winton was advised by Marquie Chalmers of North American in St. Vrains, Colorado via email that "the trace for the missing pelican case with camera is negative and that they have received [her] claim."


**ANSWER:**   Defendants admit the allegations contained in Paragraph 30.


31.   On July 30, 2003 Winton received a letter from North American assigning Classic Furniture Restoration to inspect and verify damage. Winton left a voice message for Classic Furniture on August 12, 2003. After 2 weeks of trying to contact Classic Furniture Restoration, Winton called North American in Indiana and was given the name and number of another estimator, Jon Sharpe with Windmill Furniture Restoration in Anchorage, Alaska.


**ANSWER:**   Defendants admit that Winton was first instructed to contact Classic Furniture Restoration and subsequently instructed to contact Windmill Furniture Restoration. Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 31 of Plaintiff's Complaint, and therefore deny the same.


32.   On September 10, 2003, Jon Sharpe of Windmill Furniture Restoration gave Winton an estimate for the cost to repair her damaged furniture. The estimate was submitted to

North American in Indiana for review. Mr. Sharpe returned to Winton's Anchorage residence on September 17, 2003 to inspect "other damage" claims because North American had failed to advise him that he had to verify all other damage (i.e., breakage) in addition to the furniture repairs for which he previously provided an estimate.

**ANSWER:**    Defendants admit to the inspections. Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 32 of Plaintiff's Complaint, and therefore deny the same.

33.    On October 15, 2003 Winton received a phone call from Mr. Sharpe asking her to send an additional copy of the estimates he had previously prepared to North American in Indiana, because North American had thrown away the original estimates he had sent them. In her transmittal letter, Winton told North American's claims office that she was "anxious to know how you intend to handle the loss of my camera and lenses."

**ANSWER:**    Defendants admit to the receipt of a copy of the estimate prepared by Mr. Sharpe, a true and correct copy of which is attached hereto as **Exhibit "H"**. Subject to a reasonable opportunity for further investigation or discovery, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 33 of Plaintiff's Complaint, and therefore deny the same.

17

34.     On October 20, 2003 Winton received a letter from North American regarding her claim. Most of the individual damages entries were denied by North American with the statement that the items had been "packed by owner." This was not true as to several of the damaged items, which had either been packed from the outset by FMS' employees or had originally been pack by Winton but had later been unpacked, tampered with and repacked by either FMS of North American without Winton's knowledge and consent.

**ANSWER**:     Defendants admit to the October 20, 2003 letter. A copy of which is attached hereto as **Exhibit "I"**. The contents of the letter speak for themselves and require no answer. Defendants deny the remaining averments in Paragraph 34.

35.     North American's claims department's October 20, 2003 response to Winton's claim for the missing Pelican case, camera and lenses was the cursory word "decline" without any other explanation or offer of recompense.

**ANSWER:**     The contents of the letter speak for themselves and require no answer.

36.     North American's claims department's October 20, 2003 response to Winton's claim also stated "you requested 60 cents a pound valuation to cover your possession during your move." This statement is outrageous and blatantly untrue, since Winton had protested this 60 cent per pound valuation, had request an increased valuation on multiple opportunities, and had been refused in her many attempts to increase the valuation by FMS. Winton agreed to sign the revised

Order for Service under duress and with the clear understanding that she had to sign it and to agree to the .60 cent per pound valuation if she wanted to have her household goods shipped to her.

**ANSWER:**    The contents of the letter speak for themselves and require no answer. Defendants deny the remaining averments in Paragraph 36.

37.    The result of Winton's damage claim to North American is that the claim was in large measure denied, and North American's total estimate of the damage to her goods was a paltry $225. This paltry sum was applied by North American to an outstanding balance of $386.99 that North American asserted it was owed.

**ANSWER:**    Except for the characterization of $225 as a "paltry sum," Defendants admit the averments in Paragraph 37.

38.    On December 17, 2003, Constance Livsey of Holmes Weddle & Barcott, P.C. prepared a letter to FMS outlining Plaintiff's claim for damages.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 38.

39.    On March 10, 2004 North American responded to Ms. Livsey's letter written on behalf of Winton, denying the claim and suggesting arbitration. However, North American's letter and arbitration information make clear that North American believed it had already paid the

19

maximum for which it was liable pursuant to the .60 per pound valuation, and it failed entirely to address Winton's assertion that she had been given no choice as to that valuation, and had signed the shipping documents setting out that valuation under duress and as the only means to have her goods shipped to her.

**ANSWER:**    Defendants admit. However, with respect to Winton's assertion regarding the .60 per pound valuation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the assertion, and therefore deny the same.

## FIRST CAUSE OF ACTION

40.    Winton hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 39 above, as if fully set forth herein.

**ANSWER:**    Defendants hereby reallege and incorporate by reference each and every answer to paragraphs 1 through 39 above, as if fully set forth herein.

41.    FMS and North American, and each of them, owed a contractual duty to Winton to safely and properly pack, crate, store, transport and deliver her household goods to her without damaging or losing them. FMS and North American, and each of them, breached that contractual duty. As a result of said actions and breaches, Winton has suffered contract damages for which she had not been adequately compensated through the North American claims process.

**ANSWER:**    Defendants deny the averments in Paragraph 41.

20

## **SECOND CAUSE OF ACTION**

42.    Winton hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 41 above, as if fully set forth herein.


**ANSWER:**    Defendants hereby reallege and incorporate by reference each and every answer to paragraphs 1 through 41 above, as if fully set forth herein.


43.    FMS and North American, and each of them, were negligent and grossly negligent in their handling of Winton's household goods. Such negligence and gross negligence includes but is not limited to: sending untrained employees to pack and crate Winton's belongings, sending inadequate boxes and packing materials, sending an inadequate number of Descriptive Inventory sheets, improperly storing Winton's household goods, unpacking, tampering with, and repacking her household goods without her knowledge and permission, failing to provide a wooden box in which to store and ship her Tiffany lampshade although she had been charged for same, failing to permit her to increase the valuation amount for her household goods when the shipping contract was modified for a new destination, failing to label some of the boxes in which her goods were stored and shipped, failing to maintain possession and control of her goods, misplacing and or stealing items of value such as the Pelican case, camera and lenses, uncrating and "loose loading" her goods for a shipment across the entire length and breadth of the North American continent, uncrating and "loose loading" her goods without her knowledge and permission, damaging many items of property through improper packing, padding, transporting and handling, and failing to deliver all of her goods to the agreed destination.

**ANSWER:**    Defendants deny the averments in Paragraph 43.

## THIRD CAUSE OF ACTION

44.    Winton hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 43 above, as if fully set forth herein.

**ANSWER:**    Defendants hereby reallege and incorporate by reference each and every answer to paragraphs 1 through 43 above, as if fully set forth herein.

45.    FMS and North American, and each of them, misrepresented to Winton her right, and their ability, to increase the valuation of her household goods, when each of the Defendants refused to permit Winton to increase the valuation despite her request, and told her it was impossible to modify the contract to increase the valuation, even though the contract was modified to change the delivery destination.

**ANSWER:**    Defendants deny the averments in Paragraph 45.

46.    FMS and North American, and each of them, defrauded Winton in failing to accede to her reasonable requests to increase the valuation assigned to her household goods.

**ANSWER:**    Defendants deny the averments in Paragraph 46.

22

47.    Winton relied to her detriment on the representations made by FMS and North American, and each of them, that the valuation term of the contract could not be modified, and as a result of her reliance, she was damaged when North American refused to compensate her for her proven losses that exceeded the valuation amount.

**ANSWER:**    Defendants deny the averments in Paragraph 47.

48.    FMS and North American, and each of them, defrauded Winton when, in response to her amply documented claim for damages, they declines to adequately compensate her for proven losses by stating that she has assigned, or had agreed to the assignment of a .60 per pound valuation for her goods, when she had objected to said valuation and on several occasions requested to increase the valuation

**ANSWER:**    Defendants deny the averments in Paragraph 48.

<u>**FOURTH CAUSE OF ACTION**</u>

49.    Winton hereby reallege and incorporates by reference each and every allegation contained in paragraphs 1 through 48 above, as if fully set forth herein.

**ANSWER:**    Defendants hereby realleges and incorporate by reference each and every answer to paragraphs 1 through 48 above, as if fully set forth herein.

50.    FMS and North American, and each of them, subjected Winton to coercion and duress in connection with the modification of the shipment contract, when the defendants stated to Winton that the valuation term of the contract could not be altered, when the defendants refused to negotiate the valuation term of the contract, and when the defendants told Winton that if she wanted her household goods shipped to her in Alaska, she had to agree to the contract terms the defendants demanded. Winton indeed did sign the Order for Service contract under duress.

**ANSWER:**    Defendants deny the averments in Paragraph 50.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Defendants state that Winton's Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Defendants further state that Winton's remedies are limited by the terms of the bill of lading and by North American's published tariff provisions incorporated therein.

### THIRD AFFIRMATIVE DEFENSE

Defendants further state that a portion of Winton's claims and/or damages, if any, were caused in whole or in part by Winton's, or her agents, own actions or omissions and should therefore be reduced and/or mitigated accordingly.

### FOURTH AFFIRMATIVE DEFENSE

Defendants further state that Winton's claims and/or damages, if any were proximately caused in whole or in part by individuals or entities other than Defendants, over whom Defendants had no control and are not responsible.

### FIFTH AFFIRMATIVE DEFENSE

Defendants further state that Winton's claims and/or damages, if any, should be barred and/or reduced as a result of Winton's failure to mitigate her damages.

### SIXTH AFFIRMATIVE DEFENSE

Defendants further state that Winton's damages, if any, were the result of a superseding or intervening cause or acts or omissions of others over whom Defendants had no control.

### SEVENTH AFFIRMATIVE DEFENSE

Defendants further state that Winton's remedies are limited and exclusively defined by the I.C.C. Termination Act (the "Act"), 49 U.S.C. § 13101 *et seq.*, and the Carmack Amendment to the Act, primarily codified at 49 U.S.C. § 14706, and by the Winton's ability to meet her Carmack burden of proof with regard to the alleged loss and/or damage asserted in the complaint.

### EIGHTH AFFIRMATIVE DEFENSE

Defendants further state that any alleged damages claimed by Winton were not a foreseeable consequence of any act(s) or omission(s) of Defendants.

### NINTH AFFIRMATIVE DEFENSE

Defendants further state that Winton's claims are barred by the applicable statute of limitations.

## **TENTH AFFIRMATIVE DEFENSE**

Defendants further state that, at all times relevant to this litigation, FMS was the disclosed agent of North American, as principal, and that Winton's claims against FMS related to the interstate shipment of her household goods are therefore barred.

WHEREFORE, for the foregoing reasons, the Defendants, North American Van Lines, Inc., and Florida Moving Systems, Inc., having fully answered Plaintiff's Complaint herein, request that the same be dismissed and that costs be assessed against Plaintiff and for such other relief as the Court deems just and proper.

DATED:        January 31, 2006

Respectfully submitted,

DELANEY, WILES, HAYES,
GERETY, ELLIS & YOUNG, INC.
Attorneys for Defendants

s/Clay A. Young_____
1007 W. Third Avenue, Suite 400
Anchorage, Alaska  99501
Telephone:  (907) 279-3581
Fax:  (907) 277-1331
E-mail:  cay@delaneywiles.com
AK Bar Assoc. No.  7410117

**Certificate of Service**
I hereby certify that on January 31, 2006, a copy
of this document was served by regular U.S. mail
on:

Susan L. Winton, Pro Se
909 West 80th Avenue
Anchorage, AK  99518

s/ Clay A. Young_____
Clay A. Young #7410117
113207

26